RICHARD J. LEUPOLD *vs.* THOMAS C. WEEKS ET ET., RECEIVERS.

*Right of Agent Who is Procuring Cause of Sale to Commissions—Agreement for Commissions Creating Equitable Lien on Fund—Assignment of Contract by Principal—Construction of a Contract of Agency.*

A telephone company employed the petitioner in this case as its agent to sell certain patent rights in Europe under a contract by which the agent was to receive ten per cent of the purchase price. This agent found a purchaser who agreed to pay a certain sum for the patent rights in Germany, and the telephone company made a contract of sale accordingly. The contract was subsequently assigned by the purchaser to other parties with the consent of the telephone company, but before any payments were made that company sent another agent to Europe by whom modifications in the contract were made and the final consummation of the sale was due in part to the efforts of this latter agent. *Held*, that since the petitioner was the agent who first procured the purchaser and arranged the terms of the contract that formed the foundation upon which the sale was ultimately made, he must be regarded as the procuring cause of that sale, notwithstanding the subsequent modifications of the contract, and is therefore entitled to the commission provided for in the agreement creating his agency.

Where a corporation agrees to pay an agent a designated commission for making a sale of property and directs its banker to whom the purchase-money is payable to pay the agent's commission, and receivers are afterwards appointed for the corporation who ratify the contract of sale made by the agent and receive the purchase-money, then the agent is entitled to a lien in equity upon the fund in the hands of the receivers for the payment of his stipulated commission.

A corporation after agreeing to pay an agent a certain commission for selling property and creating an equitable lien on the purchase-money for the payment thereof, assigned one-half interest in the property to a third party. The corporation was afterwards put into the hands of receivers to whom one-half of the purchase-money was paid. *Held*, that the agent is entitled to a lien on the fund in the possession of the receivers only to the extent of his stipulated commission on the amount received by them, and may prove as a general creditor for the other half of his commissions, unless it be shown that he assented to the assignment of the one-half interest in this property to the third party, and agreed to look to him for one-half of his compensation.

An agent to sell patent rights in foreign countries paid a sum of money to the principal to be expended in transporting and maintaining abroad an exhibit and an electrician, and it was agreed that in the event of a sale of the patent then so much of the money as should remain after payment of expenses should be delivered to the principal as part of the purchase price and in the event of a failure to sell, the balance of the money remaining after payment of expenses should be returned to the agent. The purchase-money of a sale made by the agent having been paid, the agent claimed that the entire deposit should be repaid to him. *Held*, that the agent is entitled only to so much of the money deposited as had not been consumed in expenses.

Appeal from an order of Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Frank G. Turner*, for the appellant.

*Joseph N. Ulman*, for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from an order of Circuit Court No. 2, of Baltimore City, dismissing the appellant's petition to have two claims in his favor treated as liens upon a fund, in the hands of the appellees, produced by the sale of certain patent rights. One of his claims, which was for the return of $2,500 paid by him toward exploiting the patents, was allowed in part, and the other claim, which was for an agent's commission of ten per cent on the proceeds of sale, was rejected entirely by the Circuit Court.

It appears from the record that the Automatic Telephone Exchange Company, an American corporation hereinafter called the Baltimore Company, was the owner of patents issued by the United States and different European governments for an automatic telephone exchange and had applications pending for additional foreign patents relating to the same contrivance. Desiring to market the foreign patents in the territory of the governments by which they had been issued or before which they were pending, the Baltimore Company through its general agent promised the appellant to give him an option òn the sale of its European patents if he would furnish $2,500 to be applied to the cost of sending to Europe an experimental exhibit of its exchange and an electrical engineer in order to properly make known the nature of the invention. The appellant accordingly paid the $2,500 to the Baltimore Company for which he received the following receipt from Joshua Horner, Jr., its treasurer.

*Baltimore*, March 8th, 1898.

"Received of Richard J. Leupold twenty-five hundred dollars ($2500.) advanced by him to guarantee the safety of certain telephone exhibits and to cover certain expenses to be incurred in effecting sale of the patent-rights upon a certain system of automatic telephone service and appliances appertaining thereto, in the countries of Great Britain, France, Germany, Belgium and Austria-Hungary, or in any one or more of said countries said expenses being chiefly in the cost of the necessary transportation of an exhibit consisting of telephones and switches to Europe, from place to place in Europe and the retransportation of said exhibit from Europe to Baltimore, cost of passage of Richard J. Leupold and an expert electrician to Europe, and the traveling and living expenses of the said Leupold and the said electrician in Europe, and their return passage from Europe.

The above mentioned $2500 is received upon the following terms and conditions that it shall be subject only to the draft of the said Leupold, for his expenses and expenses of said electrician, and the above mentioned exhibit, that in event of the sale of any of the patent-rights in and for all or any of the countries above named, that, then so much of said $2500 as shall remain after the payment of the expenses above described, shall be delivered to the Automatic Telephone Ex-

change Company as part payment of the purchase price. In the events of failure to sell any of said patent-rights in any of the countries above mentioned, that the balance of the said $2,500, after the deduction therefrom of all the expenses above referred to, shall be returned to the said Richard J. Leupold, but in no event shall the said $2500 be diminished by draft as above provided for below the amount necessary to be expended to safely retransport said exhibit to Baltimore, Maryland, U. S. A.

                   Signed.                    Joshua Horner."
Witness : Morris J. Mitchell.

The Baltimore Company thereupon on March 10th, 1898, issued to the appellant the following written authority to sell its foreign patents on a commission of ten per cent of the sales price.

"Whereas the Automatic Telephone Exchange Company Limited, of Washington, D. C., has by power of attorney dated March 11th, 1898, empowered Richard J. Leupold and Brown, Shipley & Co., bankers to sell all the patents, rights and privileges in and to a system of automatic telephone service and for Great Britain, France, Germany, Belgium and Austria-Hungary, or any of them, collectively or separately, and whereas the said ——— are solely appointed to receive the purchase price or prices therefor and whereas the said Automatic Telephone Company Limited, has agreed to allow the said Richard J. Leupold ten *per centum* (10 per cent) commissions upon the purchase price or prices received by sale of said patents, rights and privileges in and for said countries or any of them, the consideration of said ten *per centum* (10 per cent) commissions being services rendered and to be rendered by the said Richard J. Leupold in effecting a sale of the said patents, rights and privileges in the above named countries, or any of them.

Now therefore, in the event of the sale of the patents, rights and privileges above described in and for the countries above mentioned, or any of them, the said Brown, Shipley & Co., are hereby empowered and directed to pay to the said Richard J. Leupold ten *per centum* (10 per cent) of the purchase price received from the sale of the said patents, rights and privileges in and for the countries above named, or any of them ; and it is hereby understood that in the event of a sale of the patents, rights and privileges above described in and for the countries above named, or any of them, having

been effected by any one or ones whomsoever at any time be-
fore the twenty-fifth day of September, eighteen hundred and
ninety-eight, that the said Richard J. Leupold shall be never-
theless entitled to commission of ten *per centum* (10 per cent)
of the purchase-money or monies received from the sale or
sales of the said patents, rights and privileges in the coun-
tries above named, or any of them, just as fully as though
he, the said Leupold, had negotiated and effected said sale
or sales."

This paper was executed and acknowledged by the Balti-
more Company, the certificate of acknowledgment being dated
March 10th, 1898.

The appellant claimed and so testified that there was an
understanding when he paid the $2,500 that it was to be re-
turned to him in case any of the patents were sold, and he said
he had a letter to that effect, but he did not produce the letter
and we think his rights as to this $2,500 should be measured
by the terms of the written receipt taken by him, for the money, .
and by him produced in evidence.

Armed with the authority already referred to the appellant
went to Europe taking with him an electrical engineer and an
experimental telephone exchange as an exhibit which were
paid for out of the $2,500 supplied by him and started to ex-
ploit the invention there.   With the aid of his father, who was
engaged in the consular service of the German empire, and
certain friends of the latter he succeeded in interesting the offi-
cials of that government having charge of its telephone service
in the automatic exchange and finally secured an agreement
for a sale of the patents thereon for the use of that service.

The German Postoffice Department known as The Reichs-
postamt controls the entire public telephone service through-
out that country, but it does not purchase outright or own the
patents under which the telephone instruments and appliances
are made, but pays an agreed royalty for the use of such de-
vices as meet its approval to the parties controlling the patents
upon them.   It therefore became necessary to make the ar-
rangement, for the introduction of the automatic telephone
exchange into the German telephone service by a contract for

the sale of the patents to a third party subject to the approval
of the device and its adoption by the Reichspostamt.   For
that reason the formal contract of sale of the patents which
appears in the record was made with the firm of Mosino, Sachs
& Co., of the city of Berlin.   It is unnecessary to state at
length the terms of this contract.   It is sufficient to say that
it sells to Mosino, Sachs & Co. the German patents already
issued and one in process of issue for $150,000 to be paid in
cash upon the completion of the transfer, $100,000 additional
when 10,400 telephones were installed and $250,000, to be
paid in royalties on telephones to be used at the rate of two
marks per instrument.   The sale was conditioned upon the
acceptance of the invention by the Reichspostamt after one
year's trial of 400 instruments which were to be installed in its
offices in the city of Berlin by the company owning the pat-
ents at its own expense.

When the terms of this sale had been arranged by the ap-
pellant it was accepted by the Baltimore Company and the
formal contract was signed on its behalf by Mr. Tyrer its gen-
eral agent.   The evidence shows that the sale had been nego-
tiated by the appellant before Mr. Tyrer met or come in con-
tact with Mosino, Sachs & Co. who were introduced to him
by the appellant after the latter had negotiated the sale and
arranged the terms upon which it was to be made.

The 400 instruments were installed according to the con-
tract in the German service at Berlin, but before the time fixed
for their trial had expired the Baltimore Company sold to the
Strowger Automatic Telephone Exchange Co. hereinafter
called the Chicago Company all of its American patents and a
half interest in its foreign patents and also in the contract for
the sale of the German patents ; and Mosino, Sachs & Co. sold
their rights under that contract to Messrs. Ludwig, Loewe &
Co. and The Deutsche Waffen & Munitionfabrik.

On June 13th, 1901, after the appointment by the decree in
this case of the receivers for the Baltimore Company, but prior
to the expiration of the year allowed for the approval or rejec-
tion by the Reichspostamt of the 400 instruments furnished to

it on trial, an agreement was entered into by the Chicago Company with Ludwig, Loewe & Co. and the Deutsche Waffen & Munitionfabrik modifying the original contract of sale of November 5th, 1898, and extending the time for the trial of the 400 instruments by the Reichspostamt and subsequently a further extension of the time of trial was made. Both the agreement of May 18th, 1901, and the additional extension of time for the trial of the instruments afterwards received the approval of the appellees through Mr. Harman. Among the modifications made by the new agreement in the original contract of sale was the reduction of the cash purchase price to $50,000, together with $10,000 for the 400 instruments furnished on trial making $60,000, in all, but the royalty of two marks per instrument up to $250,000 was retained.

On June 28th, 1901, after the date of the modification of the contract of sale of the patents the appellees filed their petition in the Court below, setting out the sale of these patents and other similar transactions and averring that they were in danger of falling through and that it was of vital importance to the reputation of the European patents that the German government should not refuse to adopt the machine, and asking that Samuel J. Harman, one of their number, be sent to Europe with full authority to sell and transfer the patents absolutely without first reporting his transactions for approval. On this petition an order of Court was passed authorizing Mr. Harman to go to Europe for the purposes set forth in the petition with full authority to absolutely sell and transfer the foreign patents. He went abroad and after an investigation of the situation confirmed the sale of the German patents already made by appending a memorandum of confirmation to the modified contract of June 13th, 1901.

The sale of these patents to Ludwig, Loewe & Co., and the Deutsche Waffen & Munitionfabrik was thus consummated and $30,000, one half of the cash price, was paid to the receivers through Mr. Harman, and an auditor's account was stated disposing of that and other monies which had come to the hands of the receivers. The appellant excepted to the

ratification of that account because of its failnre to allow any-
thing on account of his claims and also because of the alleged
excessive allowances by it to the receivers and to Mr. Harman
individually and to other persons.

While the account was held up by these exceptions the
appellant filed two petitions in the case setting forth the pay-
ment by him of the $2,500, and his services in procuring the
sale of the German patents and claiming a lien on the fund
for his commission on the sale and for the return of the $2,500.
The receivers answered these petitions stating that they had
no knowledge of the appellant's claim or of the payment by
him of the $2,500 and demanding strict proof thereof. Testi-
mony was taken under the petition the appellant testifying in
his own behalf to the fact that the sale of the German patents
to Mosino, Sachs & Co., who assigned their purchase with
the assent of the vendor company to Ludwig, Loewe & Co.
et al., had been procured solely through his agency and that
he had paid the $2,500 to the Baltimore company. He sup-
ported his oral testimony by the production of the receipt for
the $2,500 paid by him and the document of March 10th,
1898, granting him the right and authority to sell the foreign
patents or any of them and fixing his commission at ten per
cent of the proceeds of sale. He also produced a number of
telegrams and letters tending to corroborate his oral testi-
mony. No evidence was offered in opposition to his claim.

After a hearing upon the appellant's petition the Circuit
Court by the order appealed from dismissed the petition so
far as it related to the claim for commissions on the proceeds
of sale of the German patents, but recognized his right to be
treated as a general creditor of the corporation as to the re-
turn of so much of the $2,500 paid to it by him as had not
been consumed in accordance with the terms of the agree-
ment under which it had been paid.

We agree with the learned Judge below in the disposition
made by him of the claim of the appellant for the return of
the $2,500, as we think the rights of the appellant in that con-
nection must be regulated by the written receipt taken by him
at the time he paid the money.

The terms of the receipt are to some extent contradictory but we are of the opinion that its contents taken as a whole indicate that the $2,500 were lodged by Leupold with the Baltimore Company simply to provide for the expense of sending the exhibit and engineer to Europe to assist him in his efforts to sell the foreign patent. Any excess remaining of the $2,500 after the payment of those expenses should be returned to him. It is not clear why the provision was inserted, in the latter part of the receipt, that in the event of the sale of any of the foreign patents the unexpended balance of the $2,500 should be paid to the company " as part payment of the purchase price," but we do not think that it ought to be so construed as to mean that the company was to receive and retain such balance *in addition to* the purchase-money provided for by the terms of sale. Any such payment to the company as part of the purchase price by Leupold, who was not the purchaser and did not owe the price, must have been intended to be only temporary by way of security and he would in equity be entitled to its return to him when the sale was consummated and the purchaser had paid the stipulated price.

We think, however, that the disposition made by the learned Judge of the appellant's claim for the payment to him of a commission of 10 per cent out of the proceeds of sale of the German patents was erroneous.

The record undoubtedly indicates that the ultimate consummation of the sale was to a considerable extent due to the attention given to the matter by Mr. Harman who was sent to Europe under the Court's order to effect a disposition of the foreign patents but the fact remains that the sale was made in execution of the agreement of June 13th, 1901, which was on its face a modification of the original contract of sale that was procured through the labors and the agency of the appellant from purchasers by him procured and introduced to his principal.

We cannot give our assent to the contention of the appellees that the contract of June 13th, 1901, differs so materially from

the original contract of sale that the transactions provided for by the two papers must be treated as separate and distinct from each other. The subject-matter of the sale was the same invention with later improvements and the parties to the last agreement claimed title under assignments from the parties to the original one. The last agreement on its face professes to be a modification of the original one which it says in its opening paragraph that the Strowger Automatic Telephone Exchange Co. assumes with the modifications to be stated (*"mit folgenden modificationen"*). The changes, which it is true are numerous, are then stated in detail by reference to the numbered paragraphs of the former contract, but the cardinal transaction, *i. e.*, the purchase of the German patents on the automatic telephone exchange for the use of the Reichspostamt is the same in both contracts although the latter contains the modifications in the details of the former one.

In this state of facts Leupold, who as agent procured the purchaser and introduced him to the seller and arranged the terms of the contract that formed the foundation on which the sale was ultimately made, must be regarded as the procuring cause of that sale notwithstanding the fact that its terms were modified by the principals themselves or those claiming under them before its consummation. Under these circumstances this Court has often held that the agent is entitled to his commissions. *Keener* v. *Harrod & Brooke*, 2 Md. 71; *Jones* v. *Adler*, 34 Md. 440; *Attrill* v. *Paterson*, 58 Md. 251; *Blake* v. *Stump*, 73 Md. 168, and the authorities generally are in accordance with this view. *Ency. of Law*, 2nd ed., vol. 4, 977–8; *Lunney* v. *Healey*, 44 L. R. A. 593, and the exhaustive notes to that case.

We are also of the opinion that the document of March 11th, 1898, appearing in the earlier part of this opinion constituted an equitable assignment to the appellant of ten per cent of the price to be realized from the sale of the patents therein referred to and gave him a lien therefor enforceable in equity upon the fund produced by the sale. In *Hamilton* v. *Rogers*, 8 Md. 319, our predecessors said: " Whatever might

be the rule at law, nevertheless equity will attach its jurisdiction wherever the parties, by their contract, intend to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor, or not; or if personal property, whether it is in *esse* or not; that it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto against the latter, and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy." See to same effect *Pomeroy's Equity*, secs. 1236, 1280–1283; *Brantly on Personal Property*, secs. 277, 278; *Fairbanks* v. *Sergeant*, 6 L. R. A. 475, 104 N. Y. 108.

The appointment of receivers for the Baltimore Company did not destroy the rights of the appellant under his contract of employment nor divest his lien on the proceeds of sale of the patents. Admitting the contention of the appellees that when they were appointed receivers they were at liberty to choose whether they would discard or affirm the contract of sale which at that time was an executory one, they did not discard it, they affirmed it in the most formal manner by the written memorandum appended thereto by Mr. Harman when he went to Europe armed with complete authority from the Circuit Court to dispose of the foreign patents. Furthermore they have received the fruits of that contract to the extent of the $30,000 collected by Mr. Harman when in Germany. Equity will not permit them to take the benefit of this sale which was originated by the appellant and at the same time refuse him payment of the commission to which he is entitled out of those proceeds.

The appellant's claim to this commission is especially meritorious because in addition to bringing the buyer and seller of the patents together and arranging the terms of the original contract of sale he supplied $2,500 of his own money almost all of which the record shows was expended in exploiting the patented contrivance in Europe and creating a market for it there by an actual demonstration of its merits. His instrumentality in introducing the invention to the European public

and bringing it to the favorable attention of the Reichspostamt for whose use the German patents were eventually purchased seems to have been unknown to the appellees, as in the papers filed by them seeking authority to prevent the apprehended failure of its adoption in the German service they make no mention of his connection with the attempt to have it introduced there, and in their answer to his petition they say they have no knowledge of his claim.

As only one-half of the entire $60,000 purchase-money which has fallen due under the sale of the foreign patents has been received by the appellees the appellant is entitled to a lien thereon only to the extent of ten per cent on the $30,000 received by them. But he is entitled to prove as a general creditor of the Automatic Telephone Exchange Co. for the other one-half of his commission under the agreement with him of March 11th, 1898, unless it can be shown that he assented to the assignment of the one-half interest in the foreign patents to the Strowger Automatic Telephone Exchange Co. and agreed to look to it for one-half of his compensation.

The order appealed from will be affirmed so far as it relates to the appellants claim for a return of any unexpended balance remaining of the $2,500 paid by him for exploiting the patents in Europe and it will be reversed in so far as it rejects his claim for a lien on the fund in the hands of the appellees for his commissions.

As it does not appear from the record that the Court below has ever acted upon the exceptions of the appellant to other allowances made by the auditor's account we express no opinion *pro* or *con* as to the propriety of those allowances.

> *Order affirmed in part and reversed in part and case remanded for further proceedings in accordance with this opinion.*

(Decided January 16th, 1903.)