## KENYON v. AUTOMATIC INSTRU-MENT CO.

### No. 10250.

Circuit Court of Appeals, Sixth Circuit.
March 17, 1947.

880

Eugene C. Knoblock and Milton A. Johnson, both of South Bend, Ind. (Oltsch & Knoblock and Hammerschmidt & Johnson, all of South Bend, Ind., and Bidwell & Schmidt, of Grand Rapids, Mich., on the brief), for appellant.

Clarence J. Loftus, of Chicago, Ill., and Marshall M. Uhl, of Grand Rapids, Mich. (Clarence J. Loftus, of Chicago, Ill., and Uhl, Bryant, Snow & Slawson, of Grand Rapids, Mich., on the brief), for appellee.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

Appellant, Blanche M. Kenyon, individually, and as Executrix under the Will of Bertram C. Kenyon, brought suit against appellee, Automatic Instrument Company, a Michigan corporation (herein called the Michigan corporation) for $150,000 for alleged breach of an agreement dated December 7, 1925 (Exhibit "A" to Complaint), to pay royalties upon the manufacture of a multiple disc phonograph alleged to have been invented by Kenyon.

The answer, among other things, set up the defense, that the agreement under which appellant claimed was non-assignable and non-transferable, and was not transferred to appellee by the Receiver of Automatic Instrument Company (herein called the Delaware corporation) with which company the agreement (Exhibit "A") was made; and that appellee did not accept or agree to its terms and was therefore not liable under its provisions.

The appellee filed a motion for judgment on the pleadings. The court, treating the motion as one to dismiss, and relying on the pleadings plus certain other documents and matter which had been introduced, dismissed the complaint.

The agreement of December 7, 1925, was entered into between the Delaware corporation as first party, and Bertram C. Kenyon as second party. By its first paragraph, the Delaware corporation agreed to employ Kenyon until July 11, 1926, and to pay him $60 per week for the purpose of perfecting a multiple disc phonograph. By the second, Kenyon agreed to accept employment and cooperate with the Delaware corporation.

By the third, Kenyon represented that he was the inventor of the multiple disc phonograph and that he, or the first party in his name, would attempt to cover the mechanism and operation of the machine by proper letters patent. Quoting—

"In the event that said patents are obtained by either said first or second party, the title thereto and all interest therein shall be the property of and belong to said first party, and the said second party does hereby give and grant, sell and assign unto said first party the exclusive right to make, manufacture, market, vend and operate the said phonograph, under his present rights and under future letters patent, according to the terms hereof, in any manner which it may desire to do, and covenants to and with the said party that performing its obligation under this contract it shall have, hold, and enjoy all the rights, benefits, titles, and returns of and from said invention, and that he will when so requested by said first party, duly and properly sign, seal, execute and deliver unto said first party proper assignments and any rights which may hereafter accrue under and by virtue of said invention."

The fourth paragraph stated in part:

"In consideration of the foregoing assignments and licenses, the said first party agrees that for each of said machines manufactured by it, it will on or before the tenth day of the month succeeding the completion of such machine, pay to the order of the said second party * * * the sum of five Dollars. * * *"

The paragraph concluded that the license obligation was contingent upon the patents not being attacked in court or before a commission, etc.

The fifth and last paragraph is quoted in its entirety:

"The terms upon which the license to manufacture and the assignment of prospective patents upon the said phonograph are given shall be and remain in force during the life and continuance of any or all patents issued upon the said mechanism to said second party, his heirs or assigns."

The instrument was executed by the first party by its President and Secretary, and by Kenyon, in the presence of two witnesses.

By an additional Memorandum executed on the same day, the Delaware corporation agreed to manufacture as many Multiple Record Phonographs as was consistent with their business policies—and to pay second party a minimum of $1000 a year for five years on the undertaking in Paragraph Four of the Agreement, namely, to pay $5 royalty for each machine.

Appellant's Bill of Particulars, which under Rule 12(e) of the Rules of Civil Procedure, became a part of her complaint, states, that Kenyon's invention, as disclosed to the Delaware corporation, prior to December 7, 1925, was constructed substantially as set forth in Patent No. 1,879,693, application for which was filed on July 15, 1927, and granted to the Delaware corporation September 27, 1932.

The following quotation is taken from the face of the Letters Patent:

"Bertram C. Kenyon, Wilmur W. Boa, and Clifford H. Green of Grand Rapids, Michigan, Assignors to Automatic Musical Instrument Company, of Grand Rapids, Michigan, a corporation of Delaware" (the Delaware corporation).

Appellee's bill of particulars stated that the record changing mechanism in its machines and in which appellant was primarily interested, was substantially the same as in all machines manufactured since October 18, 1935.

The case of Sligh Furniture Co. v. Automatic Musical Instrument Co.[1] (the Delaware corporation), a general creditors' bill, was brought in the District Court of the Western District of Michigan, and on February 10, 1931, a Receiver was appointed for the Delaware corporation. Appellant's bill of particulars stated that the basis of the claim here sued upon is that the license and grant of rights and obligation to pay royalties contained in Exhibit "A" was transferred to appellee, pursuant to an order in the Sligh case confirming the sale, a supplemental order confirming the sale dated December 20, 1932, the order authorizing the Receiver to execute assignment of patents in the same cause dated February 2, 1933, and the assignment of January 28, 1933, from Receiver to appellee, then known as Automatic Musical Instrument Company, a Michigan corporation; and, that appellee manufactured and sold certain multiple disc phonographs since October 18, 1935, which embody Kenyon's invention, as disclosed by him to the Delaware corporation on or before December 7, 1925.

The District Court construed the contract of December 7, 1925 (Exhibit "A"), "as a license granting exclusive right to first party" (the Delaware corporation) "therein to make, sell and operate the devices in consideration of a royalty of $5.00 for each machine manufactured; and also, an agreement to assign the naked legal title in the patent if and when issued. No right to make, sell or use arose from this agreement to assign the naked legal title. That right was created by the license operating in presenti." The court ruled that the license was simply a non-assignable, executory contract which never became an obligation of the Receiver and that the complaint failed to state a cause of action.

Before appellant could recover, she was required to show (1) that the agreement of December 7, 1925, constituted an assignment of the patent to the Delaware corporation and not a license; and (2) that the Receiver of the Delaware corporation in selling the patents to appellee as receivership assets sold them subject to the assignor's right to royalties.

Rights in patents are of course established by statute. Title 35 U.S.C.A. § 40, provides in part,—

"Every patent shall contain a short title or description of the invention or discov-

---

[1] No opinion for publication.

ery, correctly indicating its nature and design, and a grant to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery * * *."

By section 47 of the same title:

"Every patent or any interest therein shall be assignable in law by an instrument in writing, and the patentee or his assigns or legal representatives may in like manner grant and convey an exclusive right under his patent to the whole or any specified part of the United States. * * *"

The classic case on the subject of patent assignments and licenses is Waterman v. Mackenzie, 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923. It points out that the "exclusive right to make, use, and vend the invention or discovery" is one entire thing and cannot be divided by law. Further—

"The patentee or his assigns may, by instrument in writing, assign, grant, and convey, either (1), the whole patent, comprising the exclusive right to make, use, and vend an invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States. [Rev.Stat.] § 4898 [35 U.S.C.A. § 47]. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself * * *. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement. * * *"

The case points out, that an assignment to constitute a grant of title, must include the three rights, namely, to make, to use and to sell. There may be an assignment of an undivided part. See discussion in United States v. General Electric Co., 272 U.S. 476, 489, 47 S.Ct. 192, 71 L.Ed. 362; and in Green v. LeClair, 7 Cir., 24 F.2d 74.

The Waterman case further points out, that whether the transfer of an interest or right under a patent is an assignment or a license, does not depend upon the name by wihch it is called, but upon the legal effect of its provisions. No particular form is required for an assignment but the instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent. McClaskey v. Harbison-Walker Refractories Co., 3 Cir., 138 F.2d 493, 500; American Tobacco Co. v. Ascot Tobacco Works, C.C., 165 F. 207. See also Sirrocco Engineering Co. v. Monarch Ventilator Co., C.C., 184 F. 84, wherein an instrument although called a license was construed as an assignment since it granted the sole and exclusive license to manufacture, sell and use.

An assignment is not invalidated because the invention is assigned before the patent issues. Hendrie v. Sayles, 98 U.S. 546, 25 L.Ed. 176; John Tuman & Sons, Inc., v. Basse, 2 Cir., 113 F.2d 928; Dry Ice Corp. of America v. Josephson, D.C., 43 F.2d 408, 414.

Further, an assignment is not invalidated because there is a reservation of royalty (Rude v. Westcott, 130 U.S. 152, 9 S.Ct. 463, 32 L.Ed. 888) wherein the assignor-patentee reserved one-fourth of the royalties or settlement to himself, the court holding that the assignee was trustee for the assignor of a fourth of the profits. See also American Type Founders, Inc., v. Dexter Folder Co. et al., D.C., 53 F.Supp. 602.

When Exhibit "A" is examined in the light of these cases we conclude that it did constitute an assignment of Kenyon's rights in the invention with an agreement back for royalties. The draftsman of Exhibit "A" might have used more artistic language, but if that which he actually used carried a clear and unmistakable intent to part with the patent, it is sufficient.

In Pressed Steel Car Co. v. Union Pacific R. Co., 2 Cir., 297 F. 788, 790, the court observed in a case involving the construction of a patent licensing agreement, "* * * the meaning of any contract is to be primarily derived from the words used by the parties, however ill suited or badly chosen they may seem to judicial or other critics * * *." See Williston on Contracts, Rev.Ed., Vol. 3, Sec. 307.

Exhibit "A" stated that Kenyon was the inventor of a multiple disc phonograph

which was identified in the bill of particulars as that later embodied in Patent No. 1,879,693, issued to the Delaware corporation, with Kenyon one of three assignors. In paragraph 3 Kenyon at one point covenanted that in the event patents were obtained by either party "the title thereto and all interest therein shall be the property of and belong to the first party." At another point he covenanted that if the Delaware corporation fulfilled its obligations under the contract it should "have, hold and enjoy all the rights, titles, benefits and returns of and from said invention." The instrument indicated that either party might seek the letters patent and Kenyon agreed that he would assign any rights which might thereafter accrue as the result of the instrument.

There is, moreover, the covenant of Kenyon interlarded between the two clauses quoted that he "does hereby give and grant, sell and assign unto said first party the exclusive right to make, manufacture, market, vend and operate the said phonograph, under his present rights and under future letters patent. * * *"

 It is to be noted that this part of the instrument does not employ the three words, "make, use and vend," but the clause does employ the words "make" and "vend" in haec verba; and the word "operate," although lexicographically not equivalent to the word "use" when read in the light of the entire instrument, would seem to carry that connotation. A license contract which conveys the right to make, use and vend for the entire term of the patent is an assignment vesting title to the entire patent in the assignee. Heywood-Wakefield Co. v. Small, 1 Cir., 96 F.2d 496, 499 and cases there cited. And by paragraph 5 of the agreement, the "license" was to remain in force during the life and continuance of the patent.

 We think that there was a clear intent to assign all of Kenyon's right, title and interest in the invention with an agreement to execute such further necessary assignments. The reservation of royalty was consistent with an assignment of all rights. We conclude that the District Court erred in construing it as an assignment of a naked legal title with no right to make, sell and use. There is support for this conclusion in the fact that the patent which appellant states without challenge embodied the invention conveyed, was issued in the name of the Delaware corporation with Kenyon listed as an assignor. We are further supported in this conclusion by a well recognized canon that the construction of a contract which is reasonable, fair and just will prevail over one that is unusual and extraordinary. Stoddart v. Golden, 179 Cal. 663, 178 P. 707, 3 A.L.R. 1060.

We feel that it is unnecessary to go into the details of the receivership proceedings. Appellant alleged and appellee admitted that the Sligh suit against the Delaware corporation was commenced on February 10, 1931 and that the Receiver was appointed. The record shows that the Receiver, Grand Rapids Trust Company, was directed by an order of the court, to offer at public sale "all the property and assets of the defendant, Automatic Musical Instrument Company, of every name, nature and description"; that an offer was made by a Reorganization Fund of the insolvent and by a Stockholders Protective Committee of the insolvent. The court ordered that these offerors form a corporation and intervene in the suit so that the court might have full jurisdiction. The record shows that a corporation was formed which ultimately took the name of the Michigan corporation, the appellee. On February 2, 1933, the court entered an order, "* * * that the Grand Rapids Trust Company as Receiver of Automatic Musical Instrument Company, a Delaware corporation, be and it is hereby authorized and directed to execute and deliver to Automatic Musical Instrument Company, a Michigan corporation" (which in 1938 took the present name of appellee) "an assignment or assignments of * * * all letters patent of the United States * * * belonging to Automatic Musical Instrument Company. * * *"

Appellee admits that it purchased certain assets and patents of the Delaware corporation, including the patent here involved, at a public sale conducted by the Receiver under the court's order, but insists that such sale was free and clear of any liabilities of Exhibit "A." No defense

is made that the appellee was a bona fide purchaser of these patents without notice of the agreement to pay royalties. The defense is, as we have said, that the rights of the parties under the contract were unassignable and non-transferable, that the court was without power to order an assignment of the liabilities of the Delaware corporation and did not in fact do so and that appellee did not accept or agree to be bound by the terms of the contract.

We are not in accord with appellee's contention. The Receiver took the assets of the Delaware corporation as he found them. They were burdened with the obligations of Exhibit "A." He sold the assets under the direction of the court just as he took them. It cannot be said with any degree of justification that appellee took the patent here involved free from Kenyon's claim. It is an ancient maxim that "Equity follows the law" and the law conserves and enforces rights, never destroys them. Pomeroy's Equity Jurisprudence, 4th Ed., Sec. 1577. As a general rule the doctrine of caveat emptor applies to judicial sales or receivers' sales. Clark on Receivers, 2nd Ed., Vol. I, Sec. 490. If the court had desired to sell the patent free from Kenyon's claim it could easily enough have so decreed. The appointment of a receiver did not destroy Kenyon's rights under his contract. See Leupold v. Weeks, 96 Md. 280, 290, 53 A. 937.

As to the assignment by the Receiver to appellee,—

It is no longer open to question that a receiver appointed by a court may execute an assignment of a patent owned by an insolvent debtor. Ager v. Murray, 105 U.S. 126, 131, 26 L.Ed. 942. Whether he may also transfer royalty rights on a patent has not been precisely decided, although the case of In re Waterson, Berlin & Snyder Co., 2 Cir., 48 F.2d 704 involving the transfer of royalty rights to a copyright is very close indeed. We do not discuss the Snyder case except to say that it cites Werderman v. Societe Generale d'Electricite, 19 Ch.Div. 246, an English case. In that case the plaintiff, in consideration of 1000 pounds paid to him by D. & M. and of their covenants contained in the deed, assigned to them certain letters patent for electric lighting. By this indenture, assignees covenanted among other things, "that the Plaintiff, his executors, administrators, or assigns should be entitled to receive 5 percent of all net profits, whether arising by means of royalties, sale or otherwise, which should be derived by the above assignees 'and the survivor of them, and the executors or administrators of such survivor, ...eir or his assigns' from the said letters patent in Great Britain. * * *" Some time later D. & M. assigned the letters patent to the defendant company. Plaintiff sued defendant company for an account of profits, to which defendant replied that whoever is liable, no liability attached to it even though it was the assignee of the patent.

Jessel, M. R., said on page 253, "How * * * it can be argued in a Court of Equity that an assign can take the patent with notice of that arrangement and keep all the profits for himself, I am at a loss to understand."

The quotation from Jessel, M. R., embodies the crux of this case. Appellee clings to its purchase and assignment from the Receiver. It does not seek the rescission thereof. Equity will not permit appellee to take the benefits of the sale and assignment to it and at the same time refuse Kenyon's executor the royalties to which his estate is entitled. The scope of the Federal Rules of Civil Procedure, rule 1, 28 U.S.C.A. following section 723c, lends itself to an appropriate decree, or, if the District Court should deem it advisable, an amendment of the complaint may be had to conform to the established facts. Dancel v. United Shoe Mach. Co., C.C., 120 F. 839.

Finally, it is urged upon us that when the letters patent issued to the Delaware corporation as assignee, it appeared from the instrument that one Boa and one Green were assignors thereon, in addition to Kenyon, who, as inventor, made the contract for royalties upon which this suit is based; and that having acquired these rights of Boa and Green from the Receiver, it is free to make, sell and use under rights derived from them as joint assignors with Kenyon, without any obligation to Kenyon, citing Central Brass & Stamping Co. v. Stuber, 7 Cir., 220 F. 909.

The answer to this contention is, that in the authority cited, the suit was for infringement, based upon the right to exclude. Here the suit is rooted in contract, in the agreement to pay royalties upon each machine manufactured, and upon the 'equitable servitude raised thereby. See discussion in Talbot v. Quaker State Oil Ref. Co., 3 Cir., 104 F.2d 967.

The District Court did not consider whether the fact that Boa and Green appeared on the face of the patent as assignors affected any right of Kenyon under the contract. It was not necessary to decision on the record, that consideration be given to such fact, because the basis of appellant's suit was the contract of December 7, 1925, which related to a completed invention and the application for the patent was not made until July 15, 1927, or more than eighteen months later (after the contract was executed). There is nothing to indicate that either Boa or Green had any interest in Kenyon's invention at the time of the execution of the contract.

The decree will be reversed and the cause remanded for further proceedings not inconsistent herewith.

