**Marvin R. JONES, Appellant,**

v.

**COOPER INDUSTRIES, INC., Appellee.**

No. 14–95–00955–CV.

Court of Appeals of Texas, Houston, (14th Dist.).

Dec. 12, 1996.

Rehearing Overruled Feb. 13, 1997.

John R. Feather, Jeffrey A. Pyle, Houston, for appellant.

Sylvia Matthews Egner, Michael O. Connelly, Karen K. Roberts, Houston, for appellee.

Before MURPHY, C.J., and ANDERSON and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

This appeal involves a claim for breach of a patent agreement which was decided by the trial court on opposing motions for summary judgment. Marvin R. Jones ("Jones"), appellant, appeals the denial of his motion for summary judgment and the granting of summary judgment in favor of Cooper Industries, Inc. ("Cooper"), appellee. We affirm.

### Background

This dispute arises out of a Patent Rights Agreement (the "PRA"), effective October 1, 1981, whereby Jones sold and assigned certain patent rights to Koomey Blowout Preventers, Inc. ("Koomey"). In return, Koomey agreed to pay Jones, during each year of the term of the agreement, the greater of $50,000 annually or ½ of 1% of the annual gross revenues as defined in the PRA. The term of the PRA is fifteen years from the date of its execution, or until the last applicable patent expires. According to Jones, at least one of the patents will continue in effect until 2004 or 2005. The PRA provides that it shall be binding upon "Koomey, its subsidiaries, successors, assigns or licensees." Cooper ultimately obtained the patents at issue, but did not expressly assume the obligations created by the PRA and has refused to pay Jones the amounts described therein.

The present case is not the only lawsuit to originate from the disputed ownership of technology between the parties. In 1983, Cameron Iron Works, Inc. (subsequently acquired by and hereinafter referred to as "Cooper") filed suit against Koomey, Jones, and others alleging that Jones, a former employee,[1] disclosed to Koomey its confidential or trade secret information. *Cameron Iron*

---

1. Jones was an employee of Cameron from 1955 to November of 1979, when he retired. Thereafter, Jones served as a consultant for Cameron from December of 1979 through at least September of 1981.

*Works, Inc. v. Koomey Blowout Preventers, Inc.*, Cause No. 83–67214, In the 281st Judicial District Court of Harris County, Texas (hereinafter "the Cameron litigation"). Cooper claimed ownership of some of the technology involved in the patent rights subject to the PRA. During the pendency of the Cameron litigation, Koomey pledged the patents at issue to First City National Bank as security for a loan. When Koomey defaulted on the loan, the patents were foreclosed and sold to PB–BOP, Inc. (hereinafter "PBBOP"), who then intervened in the lawsuit. By Settlement Agreement dated November 26, 1990, Cooper settled the Cameron litigation. Pursuant to the settlement, PB–BOP transferred the patents at issue to Cooper. The settlement also provided that Koomey would indemnify Cooper for any claims brought by Jones based upon the bringing of the suit or its settlement.

Following the settlement of the Cameron litigation, Jones brought suit against KBOP, Koomey, PB–BOP, M.H. Koomey, Inc., and others for unpaid royalties in breach of the PRA. *Jones v. Koomey Blowout Preventers, Inc., et. al.*, Cause No. 91–029277, In the 190th Judicial District Court of Harris County, Texas (hereinafter "the Koomey litigation"). Although Cooper held title to the patents, it was not made a party to the action. Jones ultimately settled the Koomey litigation for $100,000 and released the defendants from any and all liability under the PRA. Although Cooper was expressly excluded from the release, the settlement agreement provided that Cooper was released to the extent that Koomey and the other defendants might have joint and several liability with Cooper for a claim asserted by Jones.

In September of 1994, Jones brought the present suit against Cooper for royalties claimed due throughout the time Cooper has held title to the patents. Jones filed a motion for summary judgment on Cooper's alleged liability for breach of the PRA and, alternatively, for *quantum meruit.* Cooper also moved for summary judgment on the ground that no enforceable agreement existed between Jones and Cooper and, alternatively, that Jones' recovery was otherwise barred. The trial court denied Jones' motion

and granted Cooper's motion, which rulings form the basis of this appeal.

### Standard of Review

The appropriate standard to be followed when reviewing a summary judgment is well-established:

1. the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law;

2. in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

3. every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Karl v. Oaks Minor Emergency Clinic,* 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist] 1992, writ denied). When both parties have moved for summary judgment, the reviewing court rules on all issues presented, including the order denying one party's summary judgment. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). Where, as here, the summary judgment order does not specify the grounds upon which summary judgment was granted, the reviewing court will affirm the judgment if any of the theories advanced in the motion is meritorious. *State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

### Discussion

In two points of error, Jones argues that the trial court erred in denying his motion for summary judgment and in granting Cooper's motion for summary judgment. Jones contends that Cooper, as an assignee of the patents, is obligated as a matter of law to pay Jones "royalties" under the PRA because: (1) Jones' title to the patents is a recorded legal title; (2) Jones' title is equitable because Cooper took the patents with notice of the PRA; (3) Cooper assumed the obligation to pay Jones' "royalties"; and (4) Jones is

entitled to recover under *quantum meruit*. Cooper argues that it is entitled to summary judgment because: (1) Jones' claims are barred by the statute of frauds; (2) Cooper did not assume any obligations under the PRA; (3) Jones has released his claims against Cooper; and (4) a circuity of actions prevents Jones' recovery.

Jones first argues that, as a matter of law, Cooper's chain of title to the patents obligates Cooper to pay the royalties specified in the PRA. Specifically, Jones claims that when the PRA was executed, he severed and retained title to royalties for the life of the patents. Because Jones' title to the royalties is a recorded legal title, Jones argues, the obligation to pay royalties under the PRA is a condition of that title that runs with the patents. Therefore, Jones concludes, the patent royalties are payable by whoever possesses the patents at any point during the term of the PRA.

In support of his argument, Jones likens the royalty interest under the PRA to a royalty interest reserved in a mineral estate. When a mineral estate is sold and a royalty interest is reserved, that royalty interest attaches to the mineral estate and whomever owns the mineral estate must account to the royalty interest owner for any profits from the sale of the minerals. *Sheffield v. Hogg,* 124 Tex. 290, 297, 77 S.W.2d 1021, 1024 (1934), *r'hrg overruled,* 124 Tex. 290, 80 S.W.2d 741 (1935). In Texas, a royalty interest in a mineral estate is considered to be an incorporeal form of real property and is held to have the same attributes as real property. *Id.* Jones claims that the same should hold true for a patent royalty. Jones' argument is based upon two assumptions that are grounded in principles generally applicable to conveyances of real property: (1) that Jones could sever and retain one of the rights of title to the patents, *i.e.* the right to collect royalties; and (2) that, because title to a patent is recordable, contract provisions concerning sale of the patent are covenants that run with the patent.

Jones has cited no authority, nor have we found any, for the proposition that principles of real property should apply to patents. To the contrary, patents have been recognized not as a form of real property but a form of personal property. Section 261 of Title 35 of the United States Code, which governs ownership and assignment of patents, expressly provides that, "[s]ubject to the provisions of this title, patents shall have the attributes of personal property." 35 U.S.C. § 261. *See Filmtec Corp. v. Allied–Signal Inc.,* 939 F.2d 1568, 1572 (Fed.Cir. 1991) ("[w]hile early cases have pointed to the myriad ways in which patent rights ... are closer in analogy to real than to personal property, the statutes establish as a matter of law that patents today have the attributes of personal property"); *Exxon Chem. Patents, Inc. v. Lubrizol Corp.,* 935 F.2d 1263, 1268 (Fed.Cir.1991) (1952 Act resolved conflicting precedent by providing that patents shall have the attributes of personal property). Therefore, Jones' right to collect royalties under the PRA is not akin to a royalty interest in a mineral estate. Moreover, Jones' argument fails because, unlike with real property, (1) Jones could not carve out and retain a right or condition of title in the form of "royalties" once he assigned the patents to Koomey, and (2) even if Jones could sever out a condition of title in the form of "royalties," that condition would not "run with" title to the patents and be binding upon subsequent assignees absent an express or implied assumption by the assignee.

The purpose of recordation of patents is to give notice to the world that a particular idea is owned and the owner is accorded a monopoly on the use of the idea. *Waterman v. Mackenzie,* 138 U.S. 252, 260–261, 11 S.Ct. 334, 337, 34 L.Ed. 923 (1891). "The monopoly thus granted is one entire thing and cannot be divided into parts," except as authorized by law. *Waterman,* 138 U.S. at 255, 11 S.Ct. at 335. The patentee or his assigns may assign either "(1) the whole patent comprising the exclusive right to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States." *Id.* It is undisputed that Jones sold and assigned to Koomey "his entire right, title, and interest in and to the 'Patent

Rights'" that are in issue. Had Jones desired to reserve rights in the patents he could have merely licensed them to Koomey. *See Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1552 (Fed.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995). As a licensor, Jones would have retained ownership but allowed Koomey use of the patents. *Id.* However, Jones chose to make a full and complete assignment of his interest in the patents. When such an assignment is made, it "divests the inventor of his rights as though the invention were a chattel [and] he is bound to leave the assignee free to deal with the invention as he wills." *Bunting v. McDonnell Aircraft Corp.,* 522 S.W.2d 161, 169 (Mo.1975) (citing *New Era Electric Range Co. v. Serrell,* 252 N.Y. 107, 169 N.E. 105, 106 (1929)). Further, the identification in an assignment of a monetary consideration, *i.e.* a "royalty," does not make an assignment invalid or modify or limit the absolute transfer of title. *Rude v. Westcott,* 130 U.S. 152, 163, 9 S.Ct. 463, 467, 32 L.Ed. 888 (1889); *Procter & Gamble Co. v. Kimberly–Clark Corp.,* 684 F.Supp. 1403, 1405 (N.D.Tex.1987). "Royalty" payments in an assignment contract are compensation for the sale of the patents regardless of how they are termed. *Coast Metals, Inc. v. Cape,* 205 U.S.P.Q. 154, 158, 1979 WL 25083 (D.N.J.1979). *Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle,* 770 F.Supp. 803, 811 (W.D.N.Y.1991). Thus, the money described as "royalties" in the PRA was actually consideration for the assignment, and Jones retained nothing by way of his conveyance.[2]

▇ Jones argues that, because title to a patent is recordable, contract provisions governing the sale of the patent have the same attributes as covenants that run with land. Therefore, he claims, reference to the PRA in the patent assignments to Koomey bound all future assignees of the patent under the PRA. We first note that the assignment of the patents from PB–BOP to Cooper does not mention or reference the PRA, nor does the record reflect the terms of the assignment from First City to PB–BOP upon foreclosure. Moreover, Jones cites no authority to support his claim that a covenant can "run with" a chattel. While equity may recognize covenants that do not run with land, those covenants still must relate to or concern land or its use and enjoyment. *Montgomery v. Creager,* 22 S.W.2d 463, 466 (Tex.Civ.App.—Eastland 1929, no writ). Since a patent is to be treated as personal property, there can be no covenants that "run with" the patent. 35 U.S.C. § 261. Consequently, whether or not the PRA was mentioned in prior assignments has no legal effect on Cooper's alleged obligation to pay royalties thereunder.

▇ Jones next argues that, because Cooper took the patents with notice of the PRA, it is equitably bound to pay Jones the royalties specified therein. In support of his argument, Jones relies on *Frey v. DeCordova Bend Estates Owners Ass'n,* 632 S.W.2d 877 (Tex.App.—Fort Worth 1982), *aff'd.,* 647 S.W.2d 246 (Tex.1983) and *Bentley v. Grewing,* 613 S.W.2d 49 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.). In those cases, although the courts recognized covenants that did not run with the land, the covenants related to or concerned the land. *Frey,* 647 S.W.2d at 247 (deed restrictions); *Bentley,* 613 S.W.2d at 50 (overriding royalty interest in oil and gas lease). Equity does not recognize covenants that run with personal property, such as a patent. In this respect, the present case is more analogous to *Montgomery v. Creager,* 22 S.W.2d at 466. There, Funderburk, Montgomery and Creager were partners in a number of filling stations in the town of Mineral Wells and vicinity. In June of 1928, the partnership was dissolved by mutual agreement and, pursuant to a partition agreement, Creager conveyed to Montgomery the Park Filling Station. The contract provided that Montgomery would purchase all gasoline sold at the filling station from Creager at a certain price, unless Montgomery should sell the station. *Id.* at 464. The contract further provided that, whether or not the station was sold, "Creag-

---

2. Likewise, reversionary interest clauses in the assignment contract do not prevent complete title to a patent from passing to an assignee. *Hook v. Hook & Ackerman,* 187 F.2d 52, 58 (3rd Cir.1951); *Bell Intercontinental Corp. v. United States,* 180 Ct.Cl. 1071, 381 F.2d 1004, 1011 (1967); *see also Waterman,* 138 U.S. at 256–61, 11 S.Ct. at 336–37.

er shall have the right to sell and ... [Montgomery] shall receive said gasoline for a period of at least twelve months from this date." *Id.* Montgomery complied with all of the terms of the contract until November of 1928, when he sold the station to Ford. Creager brought suit against Montgomery and Ford seeking a mandatory injunction requiring them to comply with the gas purchase obligation under the contract for a period of at least one year. *Id.* Injunctive relief was granted and, following a trial on the merits, Creager obtained judgment against both Montgomery and Ford. *Id.* at 464–65.

On appeal, Creager sought to uphold the judgment against Ford by interpreting the contract in question as one subjecting the filling station to a restricted use. *Id.* at 466. Specifically, Creager contended that Ford, having knowledge of the provisions of the contract, and with such knowledge having become the owner of the station, thereby became liable to carry out the contract. *Id.* The appellate court rejected this argument, emphasizing that the contract was for the purchase and sale of gasoline and did not affect the use or enjoyment of the land. *Id.* The court held that "[t]he agreement, if it could properly be called a covenant, is certainly not such as attaches to the property, but is purely personal between Creager and Montgomery .... [h]aving sold to Ford, without obligating Ford to carry out the contract, a case is presented of a breach of contract by Montgomery only." *Id.* at 466–67. Similarly, in the present case, Cooper is not equitably obligated to pay Jones royalties under the PRA because the PRA did not relate to land or the use or enjoyment thereof. As a result, the PRA did not "run with" the patents and was purely personal between Jones and Koomey.

■ As already noted, a royalty on a patent is consideration for the sale of the patent and subject to the law of contracts. *See Coast Metals v. Cape,* 205 U.S.P.Q. at 157. Therefore, this court must look to Texas contract law governing the acquisition of personal property to determine the nature of Cooper's obligations, if any, under the PRA. *Hartley Pen Co. v. Lindy Pen Co.,* 16 F.R.D.

141, 149 (S.D.Cal.1954) (citing *New Marshall Engine Co. v. Marshall Engine Co.,* 223 U.S. 473, 478, 32 S.Ct. 238, 239, 56 L.Ed. 513 (1912)). Generally, the assignor of a contract remains liable for performance of the obligations which he assumed therein, even after it is assigned. *Potts v. Burkett,* 278 S.W. 471, 473 (Tex.Civ.App.—Eastland 1926, no writ). The assignee of a contract is not bound to perform the assignor's obligations under the contract unless they are expressly or impliedly assumed by the assignee. *Id.*; *Int'l Ass'n of Machinists v. Falstaff Brew. Corp.,* 328 S.W.2d 778, 782 (Tex.Civ.App.— Houston 1959, no writ). To determine Cooper's liability, we must examine whether Cooper expressly or impliedly assumed the royalty obligation under the PRA.

In order to expressly assume a contractual obligation, there must be actual promissory words, or words of assumption, on the part of the assignee. *Lone Star Gas v. Mexia Oil & Gas, Inc.,* 833 S.W.2d 199, 203 (Tex.App.— Dallas 1992, no writ) (citing 4 A. CORBIN, CORBIN ON CONTRACTS § 906, at 632 n. 1). Cooper signed only the assignment of the patents from Koomey, which contained no reference to the PRA. There is no evidence that Cooper expressly assumed Koomey's obligations under the PRA.

Jones argues that, because Cooper had notice of the PRA, it impliedly assumed Koomey's obligations thereunder when the patents were assigned. Alternatively, Jones argues that the court, on equitable grounds, should imply that Cooper assumed Koomey's obligations under the PRA.

■ Implied covenants are not favored, and courts will not lightly imply additional covenants enlarging the terms of a contract. *Foster v. Wagner,* 343 S.W.2d 914, 920 (Tex. Civ.App.—El Paso 1961, writ ref'd n.r.e.).

An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so, or it must appear that it is necessary to infer

such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument. It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument as a whole.

*Danciger Oil & Refining Co. v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635 (1941) (citations omitted); *Foster*, 343 S.W.2d at 920. We find no indication in the contract between PB–BOP and Cooper that the parties contemplated Cooper would assume the obligations under the PRA. Mere knowledge of the terms of the contract between Jones and Koomey is not enough to imply those terms into the contract between Cooper and PB–BOP. Moreover, it is not necessary to infer a royalty obligation into the assignment to Cooper to effectuate the full purpose of the contract. The purpose of the contract was to transfer title to the patents to Cooper. Because we have found that the royalty payments were not a condition of title, it was not necessary for Cooper to assume the obligations in order to hold title to the patents. Therefore, we decline to find implied assumption under the terms of the written agreements.

■ Courts may also find implied assumption on equitable grounds. In *Lone Star Gas*, the Dallas Court of Appeals noted that courts have found implied assumption of obligations on equitable grounds when the benefit received by the assignee is so entwined with the burden imposed by the assignor's contract that the assignee is estopped from denying assumption and the assignee would otherwise be unjustly enriched. 833 S.W.2d at 203 (citing *Kirby Lumber Co. v. R.L. Lumber Co.*, 279 S.W. 546 (Tex.Civ. App.—Beaumont 1926, no writ)). Relying on *Kenyon v. Automatic Instrument Co.*,

160 F.2d 878 (6th Cir.1947), Jones contends equity should imply that Koomey's royalty obligations followed title to the patents. *Kenyon*, however, is distinguishable from the present case. In *Kenyon*, the patentee assigned his patents to a Delaware corporation. In consideration for the assignment, the patentee was to receive $5.00 for each machine manufactured. *Id.* at 881. The corporation was later placed into receivership, and a related corporation purchased the patent from the receiver. *Id.* at 880. The court held that since the purchasing corporation knew of the contract, and because the patentee's contract rights would be destroyed if the contract did not transfer with the patent in the receivership sale, the purchasing corporation was liable to the patentee for the royalties. *Id.* at 884.[3]

Unlike the patentee in *Kenyon*, Jones' rights under the PRA were not destroyed by the transfer of the patents to Cooper. Koomey remained obligated to Jones thereunder. Since Jones did not lose his cause of action against Koomey for breach of the PRA when the patents were transferred to Cooper, the burdens under the PRA cannot be considered inextricably entwined with ownership of the patents so as to justify implying assumption on equitable grounds. *See Potts*, 278 S.W. at 473; *see also Loose v. Bellows Falls Pulp Plaster Co.*, 266 F. 81, 84 (2nd Cir.1920) (upon assignment of contract relating to patents from original grantee of the patent to a corporation, the corporation was not liable for royalties due the patentee absent assumption of the obligation). Therefore, we decline to find that Cooper impliedly assumed Koomey's royalty obligations under the PRA.

■ Jones next points to the language in the PRA that states it is binding upon "Koomey, its subsidiaries, successors, assigns or licensees." Jones argues that, as an assignee of the patents, Cooper is liable under this clause. We disagree. A party cannot

---

**3.** The *Kenyon* court noted that, while the receiver took the assets as he found them, i.e. subject to the liabilities, "if the court had desired to sell the patent free of Kenyon's claim it could easily have so decreed." *Kenyon*, 160 F.2d at 884. Thus, the *Kenyon* court recognized that royalty agreements generally do not follow the patent. Moreover, *Kenyon* was decided in 1947, before 35 U.S.C. § 261 was amended to expressly provide that patents have the attributes of personal property.

be held liable under another party's contract without an express or implied assumption of the obligations of that contract. *Int'l Ass'n of Machinists.*, 328 S.W.2d at 778. Therefore, a recitation in a contract purporting to bind subsequent assignees does not bind the subsequent assignees absent an express assumption of the obligations. Further, in the instant case, it was the patents that were assigned, not the PRA. Even if the parties to the PRA had wanted to make it binding upon subsequent assignees of the patents, the subsequent assignees would still have to agree to be bound. The mere acceptance of an assignment does not create a liability against the accepting party. *Rosen v. Greater Mount Olive Baptist Church*, 410 S.W.2d 863, 864 (Tex.Civ.App.—Waco 1966, no writ).

■ Because Cooper did not expressly or impliedly assume Koomey's obligations under the PRA, Cooper has no liability to Jones thereunder and summary judgment in favor of Cooper on this basis was proper. Jones contends that, nevertheless, a fact issue exists regarding his *quantum meruit* claim. Specifically, Jones claims that he provided Cooper with services or materials under the PRA which would make Cooper liable in *quantum meruit*. Cooper contends *quantum meruit* does not apply in the instant case because (1) there is a contract that covers the dispute, and (2) Jones did not meet his burden of proving *quantum meruit*.

To establish a claim for *quantum meruit*, a complainant must show that (1) valuable materials and services were furnished, (2) for the person or entity sought to be charged, (3) these services were accepted, used, and enjoyed by the person or entity sought to be charged, (4) under such circumstances as to reasonably have notified the person or entity sought to be charged that the claimant, in furnishing properties or performing services, was expecting to be paid by the person sought to be charged. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990); *Economy Forms v. Williams Bros. Const. Co., Inc.*, 754 S.W.2d 451, 458 (Tex.App.—Houston [14th Dist.] 1988, no writ) (citations omitted).

As a general rule, "a party who seeks to recover the reasonable value of services ren-

dered ... will be permitted to recover in *quantum meruit* only when there is no express contract covering those services or materials." *Id.* (citing *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex.1988) and *Black Lake Pipe Line Co. v. Union Construction Co., Inc.*, 538 S.W.2d 80, 86 (Tex.1976)). In the present case there was an express contract which covered the patents and any services to be provided with regard thereto. Therefore, Jones may not recover from Cooper in *quantum meruit*. Moreover, Jones has failed to show that he provided any services for Cooper after the patents were assigned to Cooper. Cooper's summary judgement proof clearly shows that all it accepted from Koomey was the patents themselves. The fact that Jones continued to render services to Koomey under the PRA is irrelevant to any obligation Cooper may owe to Jones for services performed. Under *quantum meruit*, Jones was required to show that the services were performed *for* Cooper, and that Cooper accepted such services with knowledge that Jones expected remuneration from Cooper for his services. It is not enough to merely show that Jones' acts benefitted Cooper. *See Economy Forms*, 754 S.W.2d at 459. We find that the summary judgment proof did not raise a fact issue on Jones' *quantum meruit* claim.

Because we have found that summary judgment was properly granted on the ground that Cooper did not assume the royalty obligations under the PRA, we need not address (1) whether Jones' claims are barred by the statute of frauds, (2) whether Jones released Cooper, or (3) whether a circuity of actions would otherwise prevent Jones' recovery.

The judgment of the trial court is affirmed.