

NUMBER 13-14-00015-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

CREATIVE ARTISTS AGENCY, LLC,
TWISTED ROADS TOURING, LLC,
4FINI, INC., BRETT SALIBA, SARAH
SIQUIEROS F/K/A SARAH BAER, AND KEVIN
LYMAN,                                                    Appellants,

v.

LAS PALMAS RACE PARK, LLC, LAS
PALMAS DOWNS, INC., AND FRONT PORCH
ENTERTAINMENT,                                           Appellees.

On appeal from the 93rd District Court
of Hidalgo County, Texas.

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Garza and Longoria
Memorandum Opinion by Chief Justice Valdez

Appellants, Creative Artists Agency, LLC, Twisted Roads Touring, LLC, 4FINI, Inc., Brett Saliba, Sarah Baer, and Kevin Lyman (collectively "Creative Artists") appeal from the trial court's denial of their motion to compel arbitration with appellees, Las Palmas Race Park, LLC, Las Palmas Downs, Inc., and Front Porch Entertainment, Inc. (collectively "Las Palmas"). By their first issue, appellants contend that the trial court erred by refusing to compel arbitration under the theories of assumption of obligations and equitable estoppel. By their second issue, appellants contend that any express or implied finding on any disputed fact made by the trial court in this case is unsupported by legally or factually sufficient evidence. Finally, appellants contend that we must abate the proceedings in the trial court during the pendency of the arbitration proceedings. We affirm.

## I.    BACKGROUND

Creative Artists entered into a contract (the "Agreement") through employee, Brett Saliba, with Promotions of America, Inc., through its principal, Arnaldo "Nano" Ramirez, for purchase of a performance of the Willie Nelson's Country Throwdown Festival Concert Tour (the "Tour") at Las Palmas Race Park in Mission, Texas on June 30, 2011. According to appellants, Ramirez then orally agreed with the owners of Las Palmas Race Park, Roman and Jorge Garza ("the Garzas"), to host the Tour at the race track. It was agreed that Melhart Music would provide the stages for the Tour's performances at the race park.

According to appellants, the Agreement provided that "the 'Purchaser' [Ramirez] of the performance would pay a guaranteed monetary price of $160,000 (or 50% of the gross box office receipts less approved expenses and taxes, whichever was greater) (the

2

'Purchase Price') as well as take responsibility for and provide promotion and presentation of the performance." The Agreement required an $80,000 deposit thirty days prior to the performance. The Agreement also contained an arbitration clause stating that

> [a]ny claim or dispute arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in Los Angeles, California in accordance with the commercial rules and regulations then in effect of the American Arbitration Association. The parties hereto agree to be bound by the award of such arbitration and judgment upon the award may be entered upon any court having jurisdiction thereof.

Appellants point out that "[t]he Agreement also contained a force majeure clause that excused obligations under the Agreement for, among other things, acts of God, absence of power or other essential services, and inclement weather." The Agreement further limited damages by excluding, "among other things, indirect, consequential and exemplary damages including but not limited to lost profits." Las Palmas was not a signatory to the Agreement and only Ramirez signed the Agreement. Appellants argue that Las Palmas assumed the obligations of the Agreement and stepped into Ramirez's shoes and claim that the Garzas "communicated" with Saliba asking that Las Palmas be allowed to assume responsibility for the Tour in Mission and that Saliba agreed.

The parties agree that Las Palmas tendered performance by paying an $80,000 deposit to Creative Artists. According to Las Palmas, "[o]n the morning of the event, [Sarah Siquieros f/k/a Sarah Baer ("Baer")] arrived onsite and alleged problems with the staging provided by Melhart" and "threatened to not set up for the concert and demanded $40,000, which Las Palmas then paid by check." Appellants eventually cancelled the show. Las Palmas claims it then made a second $80,000 payment so that appellants would reschedule the show. Subsequently, appellants refused to reschedule. Appellants

3

state that "the Agreement did not provide for a 'make-up' date or any additional performance of the show."

Las Palmas filed suit against appellants on June 27, 2013 alleging causes of action for theft/conversion, fraud, conspiracy, and unjust enrichment. Appellants filed a motion to compel arbitration pursuant to the Agreement. After briefing and a hearing, the trial court denied appellants' motion to compel arbitration. In its order denying arbitration, the trial court "found that Appellants failed to establish a valid arbitration agreement with Las Palmas" and that "(1) [the Las Palmas appellees] were not signatories to a valid contract upon which Appellants base their arbitration claim, and (2) they never agreed to any written contract with Appellants, or specifically to any arbitration clause." According to Las Palmas, the trial court found that (1) appellants "failed to establish that Las Palmas's claims fell within that agreement's scope," (2) Las Palmas had not assumed the Agreement that Ramirez alone signed, and (3) Las Palmas was not relying on the Agreement for its lawsuit. The trial court concluded that "the exceptions for binding non-signatories to arbitration, specifically assumption and equitable estoppel were not applicable."

Appellants disagree and state, "The only basis by which there was any right to present the Willie Nelson's Country Throwdown Festival Concert Tour performance in Mission, Texas, arose from the terms of the Agreement that Las Palmas 'took over' and from which it now seeks alleged damages." This appeal ensued.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

We apply an abuse of discretion standard to the trial court's denial of appellants' motions to compel arbitration. *Okorafor v. Uncle Sam & Assocs.,* 295 S.W.3d 27, 38

4

(Tex. App.—Houston [1st Dist.] 2009, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *Id.*

When the trial court's ruling depends on the resolution of underlying facts, we must defer to the trial court on its resolution of those facts and any credibility determinations that may have affected those resolutions. *Id.* Furthermore, we may not substitute our judgment for the trial court on those matters. *Id.* However, we must apply a de novo standard of review to the trial court's legal conclusions because a trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Id.*

Whether a valid arbitration agreement exists is a question of law and is reviewed de novo. *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.—Corpus Christi 2003, orig. proceeding); *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 388 (Tex. App.—Houston [14th Dist.] 1998, pet. dism'd w.o.j.). The party seeking arbitration has the initial burden to prove, and the trial court must initially decide, whether there is a valid arbitration agreement and if so, whether the claims fall within the scope of the arbitration agreement. *In re Kellogg Brown & Root*, 80 S.W.3d 611, 615 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding); *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, no pet., combined appeal & orig. proceeding) ("The burden of showing one's status as a party or one's right to enforce, as with the overall burden of establishing the arbitration agreement's existence, is generally evidentiary."); *In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, orig. proceeding) ("The party seeking arbitration has the initial burden to present evidence of an arbitration agreement."). The initial burden of establishing the existence of a valid arbitration

5

agreement includes proving that the entity seeking to enforce the arbitration agreement was a party to it or had the right to enforce the agreement. *Mohamed*, 89 S.W.3d at 836; *Tex. Private Emp't Ass'n v. Lyn-Jay Int'l, Inc.*, 888 S.W.2d 529, 531, 532 (Tex. App.—Houston [1st Dist.] 1994, no writ) (op. & op. on reh'g) (holding the association itself was not party to arbitration agreement, set out in association's by-laws, that required association's members to arbitrate disputes among themselves). If a valid arbitration agreement exists, the burden then shifts to the party resisting arbitration to show that the party seeking arbitration has waived its right to compel arbitration. *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 137 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Mohamed*, 89 S.W.3d at 835).

Arbitration agreements are interpreted under traditional contract principles. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). There is a strong presumption favoring arbitration; however that presumption does not apply to the initial determination of whether a valid arbitration agreement exists. *Id.*

Generally, parties must sign arbitration agreements before being bound by them. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); *see Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000) (noting that "arbitration is a matter of contract and cannot, in general, be required for a matter involving an arbitration agreement non-signatory"). However, in the context of cases falling under the Federal Arbitration Act, the case law has carved out six theories that may bind non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).

6

## III. DOES A VALID ARBITRATION AGREEMENT EXIST?

By their first issue, appellants argue that they have shown that there is a valid arbitration agreement with Las Palmas. Acknowledging that Las Palmas is a non-signatory to the Agreement, appellants first argue that Las Palmas cannot avoid the arbitration clause in the Agreement under the principles of either equitable estoppel or assumption of the Agreement. By their second issue, appellants contend that any express or implied finding on any disputed fact is not supported by legally or factually sufficient evidence.

### A. Applicable Law

"In the context of assignment of a contract, the assignee only can be held liable under the predecessor's contract if the assignee expressly or impliedly assumes the predecessor's contractual obligations." *See Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 125–26 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *see also NextEra Retail of Tex., LP v. Investors Warranty of Am., Inc.*, 418 S.W.3d 222, 226–27 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Generally, an assignor of a contract remains liable for the obligations he originally assumed, even after the contract is assigned and "the assignee of a contract is not responsible for the assignor's obligations unless he expressly or impliedly assumes them." *NextEra Retail of Tex., LP*, Inc., 418 S.W.3d at 226. "The mere acceptance of an assignment does not create a liability against the accepting party, and there must be actual promissory words, or words of assumption, on the part of the assignee for there to be an express assumption of contractual obligations." *Id.*

"Implied covenants are not favored, and courts will not lightly imply additional covenants enlarging the terms of a contract." *Id.* at 127. An implied assumption of

7

contractual obligations may arise "when the benefit received by the assignee is so entwined with the burden imposed by the assignor's contract that the assignee is estopped from denying assumption and the assignee would otherwise be unjustly enriched." *Id.* at 227–28.

Equitable estoppel allows a non-signatory to compel arbitration if the nature of the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the non-signatory. *In re Hartigan*, 107 S.W.3d 684, 691 (Tex. App.—San Antonio 2003, orig. proceeding). In *Neatherlin Homes, Inc. v. Love*, we stated that "[u]nder certain circumstances, a party to an arbitration agreement may be compelled to arbitrate claims with a nonparty if the controversy arises from a contract containing an arbitration clause." *See* No. 13–06–328–CV, 2007 WL 700996, at *4 (Tex. App.—Corpus Christi Mar.8, 2007, orig. proceeding) (mem. op.) (citing *Meyer v. WMCO-GP LLC*, 211 S.W.3d 302, 305 (Tex. 2006); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678; *see In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 760 (Tex. 2006) (per curiam)); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738–39; *see also Merrill Lynch Trust Co. FSB*, 159 S.W.3d at 168 ("A party that is not a signatory to an arbitration agreement may enforce it if the party falls into a recognized exception under general equitable or contract law that would allow such enforcement.").

Equitable estoppel applies if a claimant seeks a direct benefit under the contract that contains the arbitration agreement. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527 (Tex. 2015). "Whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading."

8

*Id.* However, if the party's claim merely "relates to" the contract that contains the arbitration agreement, it is not enough. *Id.* "Instead, the party must seek 'to derive a direct benefit'—that is, a benefit that 'stems directly'—from that contract." *Id.* If the claim depends on the existence of the contract and would not stand independently without the contract, equitable estoppel applies. *Id.* at 527–28. "The alleged liability must 'arise[ ] solely from the contract or must be determined by reference to it.'" *Id.* at 528. Finally, "'when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law,' rather than from the contract, 'direct benefits' estoppel does not apply, even if the claim refers to or relates to the contract." *Id.*

## B.     Discussion

Appellants argue that Las Palmas seeks a direct benefit from the Agreement because they seek to recoup the purchase price paid under the Agreement and to recover "lost profits" that can be measured only with reference to the Agreement. Specifically, appellants claim that Las Palmas assumed the Agreement and its arbitration clause by undertaking to meet the Agreement's obligations, including the making of payments, in order to potentially reap a profit from the Agreement.

Las Palmas responds that the Agreement does not require it to arbitrate because Las Palmas is a non-signatory and the trial court's factual determinations are supported by the evidence. Las Palmas further argues that the evidence is legally and factually sufficient to support all of the trial court's implied findings of fact.

### 1.     Factual Findings and Conclusions of Law

9

By their second issue, appellants claim that there were "no material disputed facts," and in the alternative, "to the extent that the [trial] court found any disputed fact, there would be no legally [or factually] sufficient evidence to support any such fact finding." In their brief, although appellants have cited, in a footnote, some authority regarding how this Court reviews the sufficiency of the evidence supporting a trial court's implied factual finding when the opposing party has the burden of proof, they have not provided a clear and concise argument applying this authority to the facts of this case. *See* TEX. R. APP. P. 38.1(i). Thus, we conclude that appellants have not adequately briefed this issue regarding what we construe as appellants' general challenge to the trial court's implied factual findings. *See id.*

Appellants, however, specifically state they are challenging the trial court's implied factual finding that Las Palmas entered into an oral agreement with appellants. Appellants argue the evidence does not support such a finding because "Garza testified to an 'oral understanding' and did not purport to establish the terms of any such 'understanding' as an enforceable agreement." However, we disagree with appellants for the following reasons.

Assuming, without deciding, that appellants are correct that the evidence is insufficient to support a finding that there was no separate oral agreement, they do not explain how omitting this factual finding from our analysis proves the exceptions cited by appellants—i.e., that Las Palmas assumed the Agreement or that Las Palmas is seeking a direct benefit from the Agreement.[1] As the proponents of the motion to compel

---

[1] Appellants cite, and we find, no authority providing that a non-signatory to a contract containing an arbitration clause must prove that a separate agreement existed in order to avoid being bound by that arbitration clause. The authority provides that it was appellants' burden to prove that an exception applies to the general rule that non-signatories to a contract are not bound by the contract's arbitration clause. *In*

arbitration, in the trial court, appellants had the initial burden of proving some exception to the general rule that non-signatories are not bound by the terms of a contract containing an arbitration clause applies. *In re Kellogg Brown & Root*, 80 S.W.3d at 615; *Mohamed*, 89 S.W.3d at 836 ("The initial burden of the party seeking to compel arbitration-to establish the arbitration agreement's existence-includes proving the entity seeking to enforce the arbitration agreement was a party to it or had the right to enforce the agreement notwithstanding."); *In re Koch Indus., Inc.*, 49 S.W.3d at 444. In addition, on appeal, appellants have the burden of providing a clear and concise argument that supports our reversal, if any, of the trial court's judgment. Because appellants do not provide any substantive analysis regarding why this implied finding is not supported by the evidence and do not explain what element of a contract was not supported by the evidence, we conclude appellants' argument is not adequately briefed. *See* TEX. R. APP. P. 38.1(i).

Nonetheless, we reject this argument because the evidence showed that appellants orally offered to reschedule the concert if Las Palmas paid them $80,000, and Las Palmas orally accepted the offer and performed by paying appellants $80,000 so that appellants would reschedule the concert. In addition, according to appellants, the Agreement did not allow for rescheduling of the concert. The fact that appellants offered to reschedule the concert for $80,000 instead of requiring this amount as a forfeiture, which the Agreement required, is some evidence that a separate oral agreement existed.

---

re Kellogg Brown & Root, 80 S.W.3d at 615; *Mohamed*, 89 S.W.3d at 836 ("The initial burden of the party seeking to compel arbitration-to establish the arbitration agreement's existence-includes proving the entity seeking to enforce the arbitration agreement was a party to it or had the right to enforce the agreement notwithstanding."); *In re Koch Indus., Inc.*, 49 S.W.3d at 444.

Moreover, if appellants understood that Las Palmas had "assumed" the Agreement, appellants would not have promised to reschedule the concert for $80,000, and appellants would have instead invoked their rights under the Agreement and then sued Las Palmas for breach of contract. However, that is not what the evidence shows appellants did.

Appellants claim that there were no disputed facts in this case for the trial court to have determined. However, we agree with Las Palmas that the trial court's ruling in this case depended on the resolution of underlying disputed facts and that we may imply any factual findings that support the trial court's judgment. *See Brandywood Hous., Ltd. v. Tex. Dep't of Transp.*, 74 S.W.3d 421, 427 (Tex. App.—Houston [1st Dist.] 2001, no pet.). ("Because findings of fact were neither filed nor requested, the judgment of the trial court implies all necessary findings of fact to support it."); *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251–252 (Tex. App.—Houston [14 Dist.] 1999, pet. denied) ("[I]f the trial court files no findings of fact and conclusions of law, all findings necessary to the court's judgment, if supported by the record, will be implied. In such cases, the judgment will be affirmed if it may be upheld on any basis that has support in the evidence under any theory of law applicable to the case.") (internal citations omitted).[2] In addition, under our abuse of discretion standard of review, we must defer to the trial court on its resolution of those facts and any credibility determinations that may have affected those resolutions if they are supported by the evidence. *See Okorafor,* 295 S.W.3d at 38 ("When the ruling [on a motion to compel arbitration is] under review [and] results from the trial court's having resolved underlying facts, we must defer to the trial court's factual resolutions and

---

[2] We disagree with appellants that there were no disputed facts in the trial court.

12

any credibility determinations that may have affected those resolutions, and we may not substitute our judgment for the trial court's judgment in those matters."). Accordingly, we overrule appellant's second issue challenging the trial court's findings of fact.[3]

Therefore upon our review of the record and giving deference to the trial court's resolution of underlying facts, we conclude that the trial court's implied factual findings that are supported by the evidence include the following: (1) after Ramirez could no longer perform on the written contract, appellants told Las Palmas to pay an $80,000 deposit prior to the performance and an $80,000 fee when the headliner appeared to perform; (2) Las Palmas paid the $80,000 deposit; (3) appellants demanded that Las Palmas pay the $80,000 fee prior to the date of the concert, which Las Palmas refused to do; (4) appellants cancelled the concert; (5) Las Palmas requested that appellants reschedule the concert due to the inclement weather; (6) appellants refused to reschedule the concert unless Las Palmas paid them $80,000; (7) Las Palmas paid appellants $80,000 so that appellants would reschedule the concert; (8) although appellants accepted the $80,000 and agreed to reschedule the concert, appellants failed to do so; and (9) appellants would not return the $80,000 that Las Palmas gave them to reschedule the concert. Las Palmas alleged in its pleading that appellants committed fraud by misrepresenting that the concert would be rescheduled if Las Palmas paid $80,000. Under the terms of the Agreement, if the concert were cancelled due to inclement

---

[3] Appellants also argue in their second issue that "the evidence conclusively (or at minimum overwhelmingly) establishes that Las Palmas assumed Promotions of America's role in, and seeks to benefit from, the Agreement." These arguments apply to the issue of whether an exception binds Las Palmas to the arbitration clause of the Agreement even though it is a non-signatory to the Agreement, which we address in sections III.B.2 and 3.

13

weather, the concert would not be rescheduled and the entire purchase amount of $160,000 would be forfeited by Ramirez.[4]

### 2. Assumption

Although appellants do not specifically argue that Las Palmas explicitly assumed the obligations under the agreement, they cite authority, *Employers of Wassau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001), wherein the court found a valid arbitration agreement in the context of an explicit assumption. Thus, we have liberally construed appellants' issue as a claim that Las Palmas either explicitly or impliedly assumed the Agreement's obligations.[5]

### a. Express Assumption

Garza testified that he was providing payment of the $80,000 deposit to appellants in order to prevent the further loss of money due to Ramirez's inability to fulfill his contractual obligations and that it was never his intent to assume the Agreement's obligations. Moreover, it is not enough for appellants to show that Las Palmas performed some of Ramirez's contractual obligations to establish that appellants have conclusively proven that Las Palmas assumed the terms of the Agreement. *See NextEra Retail of Tex.*, LP, 418 S.W.3d at 226 ("The mere acceptance of an assignment does not create a

---

[4] Although many of these factual findings are undisputed, we conclude that they are necessary to the trial court's disposition of this case.

[5] Citing and quoting *Thomson–CSF, S.A. v. Am. Arbitration Assoc.*, 64 F.3d 773, 776 (2d Cir.1995), appellants state that "a party may be bound by an arbitration clause if its subsequent conduct indicates that it is *assuming the obligation to arbitrate*." (Emphasis added). However, appellants have not provided an explanation regarding how an assumption of obligations of a contract occurs or how such an assumption binds a party to arbitration. In *Thompson*, the court stated "[w]hile Thompson was aware that the Working Agreement purported to bind it as an 'affiliate' of Rediffusion, at no time did Thomson manifest an intention to be bound by that Agreement." *See id.* Thus, *Thompson* does not appear to support appellants' argument. Nonetheless, we will address appellants' issue based upon our independent research and understanding of appellants' issue.

14

liability against the accepting party.") (citing *Jones*, 938 S.W.2d at 126).  Appellants had to prove that there were actual promissory words, or words of assumption, on the part of Las Palmas for there to have been an express assumption of contractual obligations.  *See id.*  And, appellants have not pointed to any evidence in the record where Las Palmas made an express assumption of the Agreement.[6]

In addition, in her affidavit, Saliba stated that Las Palmas communicated with her in order to ask if Las Palmas could assume responsibility for the Tour performance.  The trial court could have reasonably found that Las Palmas's intent in assuming responsibility for the Tour was to prevent a substantial financial loss, which did not prove that Las Palmas *explicitly* assumed the terms of the Agreement.  *See Lone Star Gas Co., a Div. of Enserch Corp. v. Mexia Oil & Gas, Inc.*, 833 S.W.2d 199, 201 (Tex. App.—Dallas 1992, no pet.) (concluding that "[t]he assignment did not contain such express promissory words, even though the contract between Reita and Lone Star required that any assignment by the seller contain a provision obligating the assignee to perform the seller's obligations under the contract").  Although Saliba stated in her affidavit that "Las Palmas would thus be assuming Promotions of America's role as 'Purchaser' under the Agreement," this statement is conclusory and constitutes no evidence, and the trial court was correct in disregarding this statement.  *See Anderson v. Snider*, 808 S.W.2d 54, 55

---

[6] We also not that in his affidavit, Ramirez stated that he had agreed that if Las Palmas paid him $16,000, he would allow Las Palmas to assume the role of purchaser in the Agreement and that appellants agreed.  However, there is no evidence in the record that Las Palmas gave Ramirez $16,000.  Thus, the evidence does not support a conclusion that Las Palmas and Ramirez entered into a contract for Las Palmas to assume the Agreement.  *See D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 200–01 (Tex. App.—Dallas 2011, no pet.) ("An assignment is a contract between the assignor and assignee and operates by way of agreement or contract.").  There is also no evidence in the record that appellants released Ramirez from his contractual obligations.  S*ee Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 347 (Tex. 2006) ("[A]s a general rule, a party who assigns its contractual rights and duties to a third party remains liable unless expressly or impliedly released by the other party to the contract.").  Moreover, there is no evidence that Ramirez assigned his rights under the contract to Las Palmas.

15

(Tex. 1991) ("However, testimony comprised only of legal conclusions is insufficient to support summary judgment as a matter of law."); *Denco CS Corp. v. Body Bar, LLC*, 445 S.W.3d 863, 873-74 (Tex. App.—Texarkana 2014, no pet.) ("Because it does not raise fact issues, a conclusory affidavit is incompetent evidence that, as a matter of law, does not support a summary judgment.") (citing *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex.1996) (per curiam) (conclusory affidavits "are not credible, nor susceptible to being readily controverted"); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (per curiam) (op. on reh'g)); *Mowbray v. State*, 788 S.W.2d 658, 668 (Tex. App.—Corpus Christi 1990, pet. ref'd) ("Statements of legal conclusions amount to little more than the witness choosing sides on the outcome of the case."); *see also Univ. of Texas v. Poindexter*, 306 S.W.3d 798, 810 (Tex. App.—Austin 2009, no pet.) (explaining that legal conclusions do not constitute probative evidence).   Moreover, Saliba's statement regarding Las Palmas's alleged assumption of the Agreement relied on Las Palmas paying Ramirez $16,000 for the assignment of the Agreement, which the trial court could have found did not occur based on the evidence presented.  Therefore, we conclude that appellants did not conclusively establish that Las Palmas explicitly assumed the terms of the Agreement.

> b.   Implied Assumption

Next, appellants argue that Las Palmas manifested an intent to be bound by the Agreement, did not explicitly disavow any obligations arising out of the Agreement, and failed to object to the arbitration clause during the course of its performance.  However, mere knowledge of the terms of a contract between appellants and Ramirez is not enough to impute those terms to an agreement between Las Palmas and appellants.  *See Jones*,

16

938 S.W.2d at 125 (declining to find implied assumption under the terms of the written agreements on basis of mere knowledge of the terms of a contract). Therefore, we disagree that Las Palmas had a duty to explicitly disavow the Agreement or object to the arbitration clause if there was no intent to assume the terms of the Agreement. *See id.*

Appellants argue that Las Palmas "undertook to meet [the Agreement's] obligations, including making payments—all for the potential to reap a profit from the Agreement." However, the evidence supports the trial court's implied finding that Las Palmas paid appellants because Ramirez could no longer pay the purchase price and Las Palmas would have suffered financial loss if the concert did not take place. In addition, the evidence further supports the trial court's implied findings that: (1) appellants offered the performance of the concert to Las Palmas if it paid an $80,000 deposit and an $80,000 fee prior to the concert; (2) Las Palmas declined to pay the $80,000 fee prior to the concert and demanded that the concert be performed; (3) appellants refused and cancelled the concert; (4) appellants offered to reschedule the concert if Las Palmas paid $80,000; (5) Las Palmas accepted; (6) Las Palmas performed by paying the $80,000 as consideration for rescheduling the concert; and (7) appellants failed to reschedule the concert as promised. Thus, under these facts, the trial court was not required to find that Las Palmas agreed to pay the $160,000 "for the potential to reap a profit from the Agreement."

Finally, the Agreement does not provide that, if the concert were cancelled, appellants would reschedule. Here, appellants promised Las Palmas that if it paid appellants $80,000 on the date of the concert, appellants would reschedule the concert, something that appellants acknowledge the Agreement does not allow. The trial court

17

may have properly inferred, that had appellants understood that Las Palmas assumed the obligations under the Agreement, appellants would not have offered to reschedule the concert and instead would have demanded that Las Palmas make the $80,000 payment in accordance with the Agreement's terms. These terms required that the purchaser of the concert pay the $80,000 fee whether or not the concert was cancelled. In addition, the Agreement provided that this $80,000 fee would be forfeited by the purchaser in the event the concert were cancelled.

Thus, the trial court could have properly found that appellants understood that their agreement with Las Palmas did not depend on its Agreement with Ramirez. Accordingly, we cannot conclude that appellants conclusively established that Las Palmas implicitly assumed the terms of the Agreement. Therefore, the trial court did not abuse its discretion by determining that no valid arbitration clause existed under the theory of assumption.

### 3. Equitable Estoppel

Next, appellants argue that because Las Palmas seeks to derive a direct benefit from the Agreement, equitable estoppel applies. Equitable estoppel would apply if the nature of Las Palmas's underlying claims required it to rely on the terms of the Agreement that contains the arbitration provision in asserting its claims against appellants. *See In re Hartigan*, 107 S.W.3d at 691. However, in this case, the trial court may have properly found that appellants told Las Palmas that it would reschedule the concert if Las Palmas paid $80,000 and then failed to do so. Thus, the evidence supports the trial court's conclusion that Las Palmas is not relying on the Agreement and is instead relying on a separate oral promise that although may have had similar terms to the written Agreement

18

also included terms that were different from the written Agreement, including a promise to reschedule the performance for an $80,000 fee. In addition, Las Palmas seeks to recoup damages incurred due to appellants' failure to reschedule the concert and due to appellants' alleged misrepresentation that they would reschedule the concert if Las Palmas paid them $80,000. Moreover, because the substance of the claim arises from general obligations imposed by state law, including torts and other common law duties, even if Las Palmas's claims refer to or relate to the contract, "direct benefits" estoppel does not apply. *See G.T. Leach Builders, LLC*, 458 S.W.3d at 528.

Therefore, we cannot conclude that appellants met their burden of showing that equitable estoppel applies. Moreover, there is no evidence that any agreement between Las Palmas and appellants contained an arbitration clause. Therefore, because the trial court did not abuse its discretion by concluding that there is no valid arbitration agreement in this case, we overrule appellant's first issue.[7]

## IV. CONCLUSION

We affirm the trial court's judgment.

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
29th day of October, 2015.

---

[7] We need not address appellants' third issue arguing that Las Palmas's claims are within the scope of the arbitration clause, as it is not dispositive of this appeal or appellants' final issue complaining that we must abate the proceedings in the trial court during the pendency of the arbitration proceedings. *See* TEX. R. APP. P. 47.1.